UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMELIA OLIDE, | ) | 1:05cv585 OWW DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Amelia Olide ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, for Findings and Recommendations to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications for supplemental security income and disability insurance benefits on July 3, 2002, alleging disability since September 5, 2001, due to pain in her hands upon movement. AR 53-55, 57-66, 277-279. After being denied both initially and upon

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 32-35, 37-41, 42-43. On August 6, 2003, ALJ James M. Mitchell held a hearing. AR 291-327. On December 5, 2003, ALJ Mitchell found that Plaintiff was not disabled. AR 14-26. On March 7, 2005, the Appeals Council denied Plaintiff's request for review. AR 5-9.

<u>Hearing Testimony</u>

ALJ Mitchell held a hearing on August 6, 2003, in Stockton, California. Plaintiff appeared with her attorney, Franz Criego. Vocational expert ("VE") Guy E. Deaner also appeared and testified. AR 291.

Plaintiff testified that she was 48 years old and completed the seventh grade. AR 294. She stopped working in September 2001 because of pain in her arms and hands. AR 295. Plaintiff last worked as a machine operator in a cannery. AR 296. Plaintiff also worked as a campus supervisor, agricultural sorter, and as an in-home caregiver. AR 297, 299, 300.

Plaintiff explained that she could not return to these jobs because of pain in both hands, her legs and sometimes in her back. AR 301. She receives food stamps and assistance from her children. AR 302. When asked why she chose the date of September 5, 2001, as the date her disability began, Plaintiff first responded that that was when she was having trouble with her hands but then admitted that she was laid off. AR 303.

She currently lives with her friend and her friend's two children. AR 304. She prepares meals for herself twice a day and washes dishes once a day. AR 305. She vacuums once a week, does laundry twice a month, and goes shopping about twice a month. AR 305. She makes her bed daily and changes the sheets twice a week. AR 306. She watches about an hour of television a day and reads for about 30 minutes a day. AR 306. She visits with friends and relatives twice a week. AR 306. She lays down and sleeps the rest of the day. AR 307. She attends church twice a week. AR 307. She also walks to the park and to the store, and watches the children outside. AR 307. She has a driver's license and drives about four times per week. AR 308. She drives to her doctors, to church, to the store, to the cemetery and to school to pick up her grandchildren. AR 309. Plaintiff testified that she sleeps about four to five hours in a 24-hour period and takes medication three times a day. AR 309.

Plaintiff has been seeing her treating physician, Dr. Farley, for about a year.  Dr. Farley has not imposed any physical restrictions.  AR 310.  She is not currently seeing any mental health professional.  AR 310.

Plaintiff thought that she could stand for 20 minutes, sit for 30 minutes, and walk about five blocks.  AR 311-312.  She can put on her own shoes and socks and doesn't have any problems reaching to the front or side.  AR 312.  She can't reach overhead because she is unable to lift her arms.  Her arms start hurting at the shoulders.  AR 312.  She has problems holding on to things because her hands and fingers start hurting, mostly in her right hand.  AR 313.  She doesn't have any trouble picking up or holding onto pens.  AR 313.  She can dress and bathe herself.  AR 316-317.

Plaintiff told the ALJ that her hands, legs, waist and neck hurt.  AR 315.  On an average day, she feels moderate, continuous numbness, burning and aching.  AR 315.  The pain is worse in the morning and becomes worse when she sits down.  AR 315-316.  The pain is better when she lays down and medications help.  AR 316.  Plaintiff also indicated that she has headaches sometimes, that her neck burns, and that she feels tired and sometimes worthless.  AR 317.

When asked by her attorney if she recalled a conversation with Dr. Farley during which Dr. Farley indicated that Plaintiff could not lift more than 10 pounds frequently and 25 pounds occasionally because of her carpal tunnel syndrome, Plaintiff said yes.  AR 317.  When questioned by the ALJ regarding her recollection, Plaintiff indicated that she remembered that the conversation took place in Dr. Farley's office, but nothing else.  AR 318.

Plaintiff's attorney asked her if she was trying to paint herself "favorably" to the ALJ, and she indicated that she was.  AR 319.  She sleeps most of the day and most of the night.  AR 318-319.  Although she told the ALJ that she goes to church twice a week, she rarely attends church.  AR 319.  She has had two surgeries for her carpal tunnel and has received no release.  AR 319.  Plaintiff identified Maria Velasquez, who was in attendance, as her former supervisor at the cannery, and indicated that Ms. Velasquez, if called as a witness, would testify that Plaintiff could not perform her past work in the cannery because of her inability to lift the canning boxes and materials and her psychological problem.  AR 320.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, limited education, and work history, who had a light RFC. Specifically, this person could lift, push and pull 20 pounds occasionally and 10 pounds frequently. She can walk and stand frequently and sit, stoop or bend occasionally. This person could return to Plaintiff's past relevant work as campus supervisor or agricultural sorter. This person could also perform the positions of car wash attendant, parking lot booth cashier, and cafeteria attendant. AR 322.

For the second hypothetical, the ALJ added the non-exertional limitations of diminished, but correctable vision, a slight (six hours or less per shift) limitation in overhead reaching with both extremities, a slight limitation in gross manipulation with the right dominate feature, and a slight limitation in the ability to do simple, routine tasks. This person also needed occasional supervision and had slight to moderate pain. This person could return to Plaintiff's past relevant work as campus supervisor and agricultural sorter, with a ten percent erosion. AR 323.

If this person was slightly limited in attention, concentration, understanding and memory, moderately (three hours or less per shift) limited in overhead reaching with both extremities, and moderately limited in gross manipulative ability with the right dominant feature, she could return to the position of campus supervisor. AR 323. There would be a 50 percent erosion for the positions of car wash attendant, parking lot booth cashier, and cafeteria attendant. AR 324.

If this person has moderate to severe pain but is only slightly limited in the ability to perform simple, routine tasks, this person could return to Plaintiff's past relevant work as campus supervisor, with 70 percent erosion. AR 324.

If this person is moderately limited in the ability to perform simple, routine tasks, this person could not perform Plaintiff's past work as campus supervisor. AR 324.

For the third hypothetical, the ALJ asked the VE to assume an individual that could lift, push and pull 10 pounds occasionally and five pounds frequently, walk, stand, stoop and bend occasionally and sit frequently. AR 324. This person could not return to Plaintiff's past relevant work, but could perform the jobs of hand packer, surveillance system monitor and nut sorter. AR 324-325.

For the fourth hypothetical, the ALJ added the following non-exertional limitations to the exertional limitations set forth in the third hypothetical: diminished, but correctable vision, a slight (six hours or less per shift) limitation in overhead reaching with both extremities, a slight limitation in gross manipulation with the right dominate feature, and a slight limitation in the ability to do simple, routine tasks. This person also needed occasional supervision and had slight to moderate pain. This person could perform the positions of hand packer, surveillance system monitor and nut sorter, with a ten percent erosion. AR 325.

If this person was slightly limited in attention, concentration, understanding and memory, moderately (three hours or less per shift) limited in overhead reaching with both extremities, and moderately limited in gross manipulative ability with the right dominant feature, there would be a 50 percent erosion in the positions of hand packer, surveillance system monitor and nut sorter. AR 325-326.

If this person was moderately limited in the ability to perform simple, routine tasks, this person could not perform, this person would not be able to perform any of the above positions. AR 326.

Medical Record

Plaintiff was treated for type II diabetes mellitus from 1998 though at least June 2003. AR 121, 194. During this time, she was consistently diagnosed with type II diabetes mellitus, hypertension, carpal tunnel syndrome and depression related to chronic pain. AR 194, 196, 199, 202-204, 208, 218, 220-223. Her blood sugar, hypertension and depression were improved with medication. AR 196, 199, 202-204. It was also noted that her depression resolve when her stress resolved. AR 220.

Plaintiff underwent x-rays of her knees on October 1, 1998. There was minimal degenerative change with spurring of the patella in her right knee, and minimal degenerative change with spur formation of the patella in her left knee. AR 231.

Plaintiff underwent left shoulder x-rays on September 29, 2000. The x-rays revealed spurring of the proximal humerus. AR 227.

On October 31, 2000, Plaintiff underwent x-rays of her cervical spine. The x-ray revealed minimal degenerative change of the lower cervical spine. AR 226.

An x-ray of Plaintiff's wrist taken on March 16, 2001, was normal. AR 225.

Plaintiff saw her treating orthopedist, Robert Caton, M.D., on April 30, 2002. EMG studies were compatible with bilateral carpal tunnel syndrome. Plaintiff had positive Tinel's and Phalen's test with decreased sensation in a median nerve distribution. She complained of continuous pain and problems with numbness and tingling. Dr. Caton indicated that surgery was necessary due to her poor response to conservative treatment. AR 123.

On June 4, 2002, Dr. Caton performed right carpal tunnel release surgery. She tolerated the procedure well and without complications. AR 107-108.

Plaintiff returned to Dr. Caton for a follow-up on June 21, 2002. Despite a trip to the emergency room for a superficial wound infection, the wound looked good, she had minimal complaints of pain and appeared to be doing "rather well." Dr. Caton indicated that nothing other than simple, conservative treatment was necessary. AR 117.

Plaintiff saw Dr. Caton on June 24, 2002, and she was doing well. Her preoperative pain had "greatly dissipated" and she was "much improved." AR 118. Dr. Caton told Plaintiff to work with gentle range of motion and strengthening exercises, as tolerated, and indicated that Plaintiff was unable to work for a period of eight weeks. AR 118.

On August 14, 2002, State Agency physician David Pong, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Pong opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about six hours in an eight hour day, and sit for about six hours in an eight hour day. Plaintiff could occasionally use her bilateral upper extremities to push/pull. She could perform occasional handling and fingering, and could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes or scaffolds. She could not perform forceful gripping or twisting. AR 133-140.

Plaintiff saw Dr. Caton on September 25, 2002, for a follow-up. She was doing well with her right hand and the surgery had worked out well. She had "greatly dissipated symptomology"

in her right hand. Plaintiff needed the release done on her left hand, and Dr. Caton opined that Plaintiff would not be able to work for two months following the procedure. AR 210.

Plaintiff underwent left carpal tunnel release on November 5, 2002, and was doing well on November 14, 2002. AR 204.

On December 17, 2002, Plaintiff saw Rebecca Jordan, M.D., for a neurological evaluation. Plaintiff complained of numbness and stabbing and pinching pain in her hands, worse in the left than the right. She also complained of pins and needles and tingling in her feet. On examination, range of motion in her back was normal, she had no muscle spasms in her back, and her straight leg raising test was negative. She had normal muscle bulk and tone, but strength testing in her hands was hampered by pain. Plaintiff reported decreased sensation in the right hand and decreased sensation and hypersensitivity in the left hand. She has positive Phalen's test bilaterally and positive Tinel's test in the left wrist. Dr. Jordan diagnosed bilateral carpal tunnel syndrome, status-post bilateral surgeries, with continued pain and numbness in both hands, hypertension, and type II diabetes mellitus, under inadequate control. Dr. Jordan indicated that Plaintiff was limited to occasional handling, manipulation and use of push-pull devices with either hand. She could stand and walk about six hours with customary breaks, and her sitting was unrestricted. She could lift and carry 25 pounds occasionally and 10 pounds frequently. AR 157-161.

On January 24, 2003, State Agency physician Sandra Clancey, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Clancey opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about 6 hours in an eight hour day, and sit for about six hours in an eight hour day. She was unlimited in pushing/pulling. She could occasionally climb ladders, but never ropes or scaffolds. She was precluded from constant forceful gripping, grasping, wrist torquing, or keying and typing, although she could occasionally perform these activities. Plaintiff could frequently balance, stoop, kneel, crouch and crawl. AR 165-172. Dr. Clancey noted that there was no evidence of end organ damage due to diabetes. AR 170.

On April 28, 2003, Plaintiff's treating physician, Joy Farley, M.D., completed a questionnaire. Dr. Farley opined that Plaintiff's carpal tunnel syndrome prevented her from performing more than sedentary work. She was unrestricted in sitting and standing/walking. She could lift 10 pounds frequently and 25 pounds occasionally. Plaintiff could perform reaching, handling, feeling, pushing/pulling and grasping for less than one third of the day each, and could perform each activity for 10-20 minutes at a time. Dr. Farley indicated that these limitations began on June 20, 2001. AR 244-245.

Plaintiff was evaluated by psychologist Robert L. Morgan, Ph.D., on July 7, 2003. Plaintiff reported that she had diabetes, hypertension and allergies, and that she was status post bilateral carpal tunnel surgery. Plaintiff also reported that in 2002, she was in a motor vehicle accident during which a Mayflower moving van reversed over her car. Plaintiff reported that she sustained injuries relative to whiplash and that a lawsuit was initiated. On mental status examination, Plaintiff presented in a severely depressed mood, was tearful throughout the evaluation, and acknowledged periodic suicidal ideation. Her affect was significantly restricted, but she denied any hallucinations. Her thought process was logical and goal-oriented. AR 247-252.

Dr. Morgan diagnosed major depressive disorder, single episode, severe, without psychosis, post traumatic stress disorder, pain disorder associated with psychological factors and a general medical condition, and a personality disorder, not otherwise specified. AR 253. He opined that Plaintiff had marked restrictions in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. She was mildly impaired in her ability to understand, remember and carry out simple, one-to-two step instructions, but could maintain concentration and attention for at least two hour increments. Her ability to carry out technical or complex instructions was markedly limited, as was her ability to relate and interact with supervisors, co-workers and the public. Dr. Morgan opined that Plaintiff could not withstand the stressors and pressures associated with an eight hour workday. He characterized her prognosis at "quite guarded" and indicated that she was "thought to have been disabled" since she applied for social security benefits. AR 255.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, carpal tunnel syndrome, hypertension and obesity. AR 19. Despite these impairments, the ALJ found that Plaintiff retained the RFC to perform light work, but was slightly limited in her ability to reach overhead with either upper extremity, and could occasionally climb, balance, stoop, crouch, crawl and kneel. She was moderately limited in her ability to perform fine manipulation with her right, dominant upper extremity. Her frequency of moderate to severe pain results in a slightly decreased ability to perform simple, routine repetitive tasks. AR 22. Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as campus monitor. Alternatively, based on the testimony of the VE and the Medical-Vocational Rules, the ALJ found Plaintiff not disabled. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (diabetes mellitus, carpal tunnel syndrome, hypertension and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as campus monitor; and alternatively, (5) retains the RFC to perform a significant range of light work. AR 24-25.

Plaintiff argues that the ALJ (1) did not properly develop or evaluate the mental health evidence; and (2) failed to properly evaluate Plaintiff's RFC.

**DISCUSSION**

A.      Mental Health Evidence

Plaintiff argues that the ALJ failed to properly consider the mental health record by failing to properly credit Plaintiff for taking medication for depression, failing to properly credit

---

[2] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

10

Dr. Morgan's report, and for substituting his opinion for that of the psychiatrist. She also contends that the ALJ should have further developed the mental health record.

Credibility determinations are the province of the ALJ. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In assessing the evidence of Plaintiff's depression, the ALJ noted that Plaintiff reported that she does not want to get out of bed some days and that she locks herself in her room because she feels so depressed and helpless. AR 19. The ALJ found her testimony not wholly credible, in light of the evidence suggesting that her depression improved with medication and decreased stress. AR 19. The ALJ also noted that when Plaintiff saw Dr. Morgan at the request of her attorney, on July 7, 2003, Plaintiff reported that she had not previously sought mental health treatment. AR 21. Similarly, despite Dr. Morgan's finding of marked limitations, Plaintiff testified at the hearing that she is not seeking any mental health treatment. AR 22; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). The ALJ's citation to these inconsistencies is sufficient to allow the Court to conclude that the ALJ did not arbitrarily reject Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ also thoroughly reviewed Dr. Morgan's report and opinion. As an examining doctor, Dr. Morgan's opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995). Here, the ALJ first explained that the Dr. Morgan gave undue weight to the Plaintiff's subjective complaints. *Thomas*, 278 F.3d at 958-959; *Fair v. Bowen*, 885 F.2d 597, 603-605 (9th Cir. 1989) (ALJ entitled to reject opinion based on properly discredited subjective complaints). Indeed, the ALJ explained that Plaintiff's testimony that she was not seeking mental health treatment "flies in the face of the purportedly marked limitations" noted by Dr. Morgan, and that if Plaintiff were "truly functioning with marked impairments she both would have sought treatment, and her treating physicians would have noted marked symptoms and would have prescribed more significant treatment." AR 22. The ALJ also noted the inconsistencies in Plaintiff's report of daily activities, explaining that in contrast to what she told Dr. Morgan, she testified to a wide variety to daily activities. AR 22. Finally, the ALJ documented Plaintiff's

manicured nails and noted that this shows that Plaintiff cared about her personal appearance. AR 22. *Fair,* 885 F.2d at 603 (ALJ may properly reject subjective complaints based on ability to engage in activities inconsistent with such complaints).

The ALJ also questioned Dr. Moragn's diagnosis of post traumatic stress disorder resulting from a 2002 motor vehicle accident. AR 22. The ALJ explained that there is little, if any, evidence in the record that this accident caused any significant injury.[3] AR 22. This was a proper consideration. *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (lack of objective medical support is an appropriate basis for rejecting medical opinion).

The ALJ gave specific and legitimate reasons for rejecting Dr. Morgan's opinion. Insofar as Plaintiff contends that the ALJ should have developed the record, her argument is without merit. There is no indication that the evidence was ambiguous or inadequate to allow for proper evaluation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Instead, the medical evidence and Plaintiff's own testimony demonstrate that her depression was sufficiently controlled with medication and did not cause the marked limitations suggested by Dr. Morgan.

B.  RFC Finding

Next, Plaintiff argues that the ALJ failed to properly credit the medical opinions in making his RFC determination. Plaintiff's argument focuses on the RFC finding as to the use of her hands and the implication of her pain.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when

---

[3] The year of the accident is unclear as Dr. Morgan reports that the accident occurred in 2001 and 2002. This does not change the fact that there is little, if any, evidence of such an accident, whether it occurred in 2001 or 2002.

12

considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

Here, the ALJ found that Plaintiff retained the RFC to perform light work, but was slightly limited in her ability to reach overhead with either upper extremity, and could occasionally climb, balance, stoop, crouch, crawl and kneel. She was moderately limited in her ability to perform fine manipulation with her right, dominant upper extremity. Her frequency of moderate to severe pain resulted in a slightly decreased ability to perform simple, routine repetitive tasks. AR 22.

In making this assessment, the ALJ gave "great weight" to Dr. Caton's September 25, 2002, report that Plaintiff's right hand was doing well following surgery and that her symptomology had greatly dissipated. AR 20. The ALJ determined that this was consistent with the evidence, including the objective findings on examination.

The ALJ also gave "great weight" to the April 28, 2003, assessment of treating physician Dr. Farley, which indicated that Plaintiff could lift 25 pounds occasionally and 10 frequently, could reach, handle, feel, push/pull or grasp for ten to 20 minutes at a time for a total of less than one-third of an eight hour day. AR 20, 244-245. The ALJ determined that this assessment, to the extent that the manipulation restrictions correspond with a moderately limited ability to perform fine manipulation with her right, dominant, upper extremity, was consistent with the evidence. The ALJ was entitled to rely on Dr. Farley's assessment. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995).

Next, the ALJ reviewed Dr. Jordan's examination and findings, and gave "great weight" to her assessment that Plaintiff could occasionally handle, manipulate, and use push/pull devices with either hand. AR 21, 161. Dr. Jordan's assessment was based on her independent clinical examination of Plaintiff and therefore constitutes substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ also set forth the assessments of the State Agency physicians, and gave "significant weight" to the finding that Plaintiff could perform light work with occasional use of either of her upper extremities, could occasionally handle and finger, and could occasionally

grasp, torque, forcefully grip or type on a keyboard.  AR 21.  In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability.  20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).  These findings were also consistent with the opinions of Dr. Farley and Dr. Jordan and serve as substantial evidence.  *Thomas,* 278 F.3d at 957 (opinions of non-treating, non-examining physicians consistent with independent clinical findings may serve as substantial evidence).

Plaintiff argues that the evidence supports a finding that she is more than occasionally restricted in the use of both hands, that her left hand is restricted, and that her limitations go beyond mere manipulation limitations in the right hand.  Plaintiff points to the assessments of two of the State Agency physicians, who opined that Plaintiff could never forcefully grip or twist.  Although the ALJ adopted the bulk of the State Agency physicians' opinions, he did not believe that a complete prohibition against forceful gripping and twisting was supported by the medical record.  AR 21.  The ALJ is responsible for resolving conflicts in the medical evidence and was entitled to adopt a portion of their opinions.  *Magallanes,* 881 F.2d at 750, 753.

Plaintiff also argues that the ALJ made an inconsistent RFC finding insofar as he found that Plaintiff suffered from moderate to severe pain, but found that she only had a mild concentration limitation.  Without explanation or support, Plaintiff appears to argue that moderate to severe pain should automatically resulting in a finding of a severe limitation in concentration.  However, there is no evidence that Plaintiff suffers from severe limitations in concentration.  Indeed, even Dr. Morgan found that Plaintiff was only mildly limited in her ability to understand, remember and carry out simple, one-to-two step tasks.  AR 255.  The ALJ likely gave Plaintiff the benefit of the doubt in finding that her pain resulted in a slightly decreased ability to perform simple, routine tasks.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Amelia Olide.

These findings and recommendations will be submitted to the Honorable Oliver W. Wanger, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 25, 2006**                             **/s/ Dennis L. Beck**
3b142a                                          UNITED STATES MAGISTRATE JUDGE